UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

| | |
|---|---|
| ROBERT CASTLE, | ) |
| | ) |
| Plaintiff/Petitioner, | ) |
| | ) |
| v. | ) NO. 7:23-CV-00004-DCR-MAS |
| | ) |
| DANIEL AKERS, | ) |
| *Warden, Lee Adjustment Center*, | ) |
| | ) |
| Defendant/Respondent. | ) |

**REPORT AND RECOMMENDATION**

Plaintiff/Petitioner Robert Castle ("Castle") filed a Motion for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. [DE 1]. After conducting its initial review, the Court ordered Defendant/Respondent Warden Daniel Akers ("Warden Akers") to respond or file an appropriate motion. [DE 7]. Warden Akers filed a response, and Castle replied. [DE 12 & 17]. For the reasons set forth below, the Court recommends the District Court dismiss the petition as untimely.

**I.    FACTS AND PROCEDURAL HISTORY**

In February 2017, Castle was indicted for six counts of sexual abuse in the first degree and ten counts of sodomy in the first degree. [DE 12-2, PageID# 132–35 (Johnson Cir. Ct. Indict.)]. As the victim was under the age of twelve, the sexual abuse charges were Class C felonies under Kentucky Revised Statute ("KRS") § 510.110(2) and the sodomy charges were Class A felonies under KRS § 510.070(2).

So, the Class C sexual abuse charges had a penalty range of five to ten years' imprisonment and the Class A sodomy charges had a penalty range of twenty to fifty years' imprisonment, or life imprisonment. KRS § 532.060(2)(a), (c)

Castle and the Commonwealth entered into a plea agreement in September 2017. Therein, the Commonwealth agreed to amend four of the six sexual abuse charges and all the sodomy charges, converting four of the sexual abuse charges to Class D felonies and all the sodomy charges to Class B felonies. [DE 12-7, PageID# 145]. According to the agreement, Castle would receive five years' imprisonment on each of the sexual abuse charges and twenty years' imprisonment on the sodomy charges, all to run concurrently and totaling twenty years' imprisonment. [DE 12-7, PageID# 146]. Two months later, on December 18, 2017, the Johnson Circuit Court entered a judgment and sentenced Castle to twenty years' imprisonment. [DE 12-10, PageID# 153–59].

On August 28, 2019, Castle filed a motion with the Johnson Circuit Court, asking the court to compel his trial attorney, Hon. Garland Arnett, to produce his case file. [DE 12-11, PageID# 160]. He followed up the motion with multiple letters to the court, explaining that he received "a large amount of documents" from his lawyer's office, but missing among the documents were any communications between his attorney and the Commonwealth. [DE 12-12, PageID# 163; *see also* DE 12-13 PageID# 166]. Castle filed a motion captioned "Motion for Findings of Fact and Conclusions of Law," again asking the court to consider his Motion to Compel. [DE 12-14, PageID# 170]. The record before this Court does not indicate that Johnson

2

Circuit Court resolved Castle's motion. However, Castle states in his § 2254 petition that the court did enter an order compelling Arnett to produce Castle's full case file and that he received it on November 16, 2019. [DE 1-1, PageID# 22 n.3].

Later, after reviewing the file, Castle discovered a written plea offer from the Commonwealth offering a fifteen (15) year sentence dated February 23, 2017. On July 9, 2020, Castle sought post-conviction relief, under Ky. R. Crim. P. ("RCr") 60.02(e), alleging that his attorney was ineffective for failing to inform him of the Commonwealth's February 2017 plea offer. [DE 12-15, PageID# 172]. He supplemented his motion, properly converting it to a motion made pursuant to RCr 11.42 instead. [DE 12-18, PageID# 187].

The Johnson Circuit Court held an evidentiary hearing on Castle's motion, and described the testimony offered therein as follows:

> [Castle] testified on his own behalf. . . . He testified that at or near the time of his arraignment, he did not receive any other plea offers. He learned he was offered twenty years to serve in September 2017 and accepted that plea. He testified that he did not know that there was an offer made in February 2017 until legal aid at the facility where he was located looked through the file and found the offer . . . . It contained an offer for seven years to serve on six counts of sexual abuse in the first degree, Class D felony and fifteen years to serve on ten years of sodomy in the first degree, a Class A felony, to run concurrently to each other for a total sentence of fifteen years. He testified that he had never seen that offer until he was in prison.
>
> [Castle] also called as a witness Garland Arnett, the Public Defender who represented the defendant. He stated that he saw the plea offer in February 2017 for fifteen years. He noticed that there were no amended charges. He noticed that the sexual abuse offer of seven years was consistent with the felony for that particular charge, but stated that the offer of fifteen years for the remaining charges was inconsistent with the statute, as the other ten counts charged a Class A felony, which would require a minimum sentence of twenty years. He testified that he did not think it was a valid offer on [its] face, and therefore did not

3

communicate that offer to the defendant. He testified that he spoke with Cassandra Hockenberry, [a] paralegal in the office, and her comment was that the former Commonwealth's Attorney, Anna Melvin, had messed up the offer as she occasionally did.

[DE 12-18, PageID# 231–233].

The Johnson Circuit Court ultimately denied Castle's post-conviction motion and concluded as a matter of law that Castle was not denied effective assistance of counsel during his criminal proceedings. The court reached this conclusion because February 2017 offer was "invalid on its face" and "[c]onveying that offer to the defendant would have nothing other than create confusion, since it was obviously an offer that could never have been brought to fruition." [DE 12-18, PageID# 233]. Castle timely appealed the court's order. [DE 12-18, PageID# 234]. The Kentucky Court of Appeals affirmed the Johnson Circuit Court's decision, agreeing that Castle could not demonstrate that Arnett was ineffective for failing to communicate a plea offer that contained a "patently illegal" fifteen-year sentence for Class A felonies. [DE 12-22, PageID# 289]. Castle moved the Kentucky Supreme Court to grant discretionary review of the Kentucky Court of Appeals' decision, which was ultimately denied on September 14, 2022. [DE 12-26, PageID# 315].

Castle filed the instant petition under 28 U.S.C. § 2254 on January 10, 2023, alleging a single claim of ineffective assistance of counsel mirroring his post-conviction motion in state court. Warden Akers avers that the petition is untimely because it was not filed within the one-year statute of limitations provided by the Antiterrorism and Death Penalty Act ("AEDPA"), but that Castle's petition fails on

4

the merits regardless. Castle counters that he is entitled to statutory tolling and, if necessary, equitable tolling.

## II. STANDARD OF REVIEW

Pursuant to AEDPA,

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). This standard of review is "highly deferential" and "difficult to meet." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). It is settled that a federal habeas court may overturn a state court's application of federal law only if it is so erroneous that "there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents." *Nevada v. Jackson*, 569 U.S. 505, 508–09 (2013) (quoting *Harrington v. Richter*, 562 U.S. 86, 101 (2011)).

This exacting standard only applies with respect to claims that were adjudicated on the merits in the state court proceedings. "Before a federal court may grant habeas relief to a state prisoner, the prisoner must exhaust his remedies in state court. In other words, the state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition." *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). The federal

5

courts must consider any procedural-bar issue that would preclude consideration of the petitioner's claims on the merits, including the procedural bar of the claims raised in the habeas petition that were not adjudicated in the state court. "In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

Where the petitioner makes a factual argument, "[t]he federal court must presume that all determinations of factual issues made by the state court are correct unless the defendant can rebut that presumption by clear and convincing evidence." *Mitchell v. Mason*, 325 F.3d 732, 737–38 (6th Cir. 2003).

### III.   ANALYSIS

Importantly, Warden Akers asserts as an affirmative defense that Castle's petition is untimely. So, the Court must first determine whether it was timely filed. *Daniels v. United States*, 532 U.S. 374, 381, 121 S. Ct. 1578, 149 L. Ed. 2d 590 (2001) ("Procedural barriers, such as statutes of limitations and rules concerning procedural default and exhaustion of remedies, operate to limit access to review on the merits of a constitutional claim."); *see also United States v. Olano*, 507 U.S. 725, 731, 113 S. Ct. 1770, 123 L. Ed. 2d 508 (1993).

A.   **TIMELINESS**

Under AEDPA, a one-year period of limitation begins to run from the latest of one of the following dates:

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1)(A)–(D).

Castle asserts that the date that the statute of limitation began to run for his petition is November 16, 2019, which is the date he received his case file from Arnett containing the unexecuted and previously nondisclosed February 2017 plea offer. However, Warden Akers stated in his response brief that he is "is not willing to concede that Castle did not know about the 15-year offer until November 16, 2019, as Castle claims." [DE 12, PageID# 117, n.5]. Without pointing to any evidence, Warden Akers avers "that there is every reason to believe that Castle received a copy of the 15-year offer form with the initial copy of his file, sometime before September 23, 2019." [DE 12, PageID# 117, n.5].[1]

---

[1] September 23, 2019 is the date that Castle's first letter to the court inquiring about the status of his Motion to Compel was filed.

7

Based on the record before this Court, at no time during the state court proceedings did any party question that Castle discovered the February 2017 plea offer on November 16, 2019. First, the state court record definitively shows that Arnett did not tell Castle about the first plea offer. Even though it denied Castle's RCr 11.42 motion, the Johnson Circuit Court indicated that Arnette's testimony during the evidentiary hearing was that "[Arnette] did not think it was a valid [plea] offer on [its] face, and therefore did not communicate that offer to [Castle]." [DE 12-18, PageID# 233]. The Kentucky Court of Appeals concurred that Arnette did not convey the February 2017 plea offer to Castle. [DE 12-22, PageID# 285].

Second, the state court record supports the veracity of Castle's claim that he did not learn about the initial plea offer until receiving the full case file. The Court looks to the multiple letters sent by Castle to the state court relating to his pending Motion to Compel, wherein he claimed he had received copies of portions of his case file. Missing from the file, according to Castle, were complete documents (some documents appeared to be originally double-sided, but the copies were solely of one side); and communications between his attorney and the Commonwealth. In either case, it is entirely possible that a copy of the February 2017 plea offer was omitted from his attorney's initial production of the case file. Furthermore, there is no indication that Castle learned of the initial plea offer before September 23, 2023 in this record or the state court record, besides Warden Akers' recent averment. Certainly, the court record (including Castle's Motion to Compel and follow-up correspondence to the court) indicate he was diligent in obtaining his full case file,

8

which ultimately contained the factual predicate for his ineffective assistance of counsel claim. So, absent any evidence to the contrary and consistent with the state court's factual recitations, this Court concludes that Castle's statute of limitations for his § 2254 petition began to run on November 16, 2019.

Critically, the one-year statute of limitations can be tolled upon the filing of an "application for State post-conviction or other collateral review[.]" 28 U.S.C. § 2244(d)(2). Both Castle and Warden Akers agree that the statute of limitations was tolled when Castle filed his post-conviction motion. Warden Akers used the date on which the motion was filed in state court (July 27, 2020) to calculate the number of days that had run since the date of discovery on November 16, 2019 (254 days). [DE 12, PageID# 117]. However, Castle contends that the Court should instead use July 13, 2020.[2] [DE 16, PageID# 321].

The Court shall consider Castle's post-conviction motion filed on July 27, 2020 because that is the day it was "properly filed" within the meaning of 28 U.S.C. § 2244(d)(2). The Sixth Circuit has held that "[a]n application for post-conviction or other collateral review is 'properly filed' when its delivery and acceptance are in compliance with the applicable laws and rules governing filings[.]" *Israfil v. Russell*, 276 F.3d 768, 771, 18 F. App'x 278, 281 (6th Cir. 2001) (citing *Artuz v. Bennett*, 531 U.S. 4, 121 S. Ct. 361, 363-365, 148 L. Ed. 2d 213 (2000)). While Kentucky does recognize a prison mailbox rule, the rule only applies to appeals, and not to post-

---

[2] Castle calculated July 13, 2020 by adding three days to the date he signed the RCr 60.02 motion (July 9, 2023), as he argues he should be permitted 3 days for mailing under Fed. R. Civ. P. 6(d) and Ky. R. Civ. P. 6.05. [DE 16, PageID# 321 (stating that day-three fell on a Sunday, so the operative date should be Monday, July 13, 2020)].

conviction motions. *Ordway v. Jordan*, No. 5:18-CV-00189-TBR-LLK, 2019 U.S. Dist. LEXIS 231384, at *4 n.1 (W.D. Ky. Oct. 4, 2019) (citing *Moorman v. Commonwealth*, 484 S.W.3d 751, 754 (Ky. App. 2016); RCr 12.04(5) ("If an inmate files a notice of appeal in a criminal case, the notice shall be considered filed if its envelope is officially marked as having been deposited in the institution's internal mail system on or before the last day for filing with sufficient First Class postage prepaid.")). *See also Boulder v. Chandler*, Civil Action No. 5:21-CV-314-CHB, 2023 U.S. Dist. LEXIS 45219, at *5 (E.D. Ky. Mar. 17, 2023) (denying § 2254 as untimely because timeliness of post-conviction motion is governed by state statute) (citing *Vroman v. Brigano*, 346 F.3d 598, 603 (6th Cir. 2003)); *Carver v. Ky. Department of Corr.*, No. 1:20-CV-00186-GNS-HBB, 2022 U.S. Dist. LEXIS 240580, at *5 (W.D. Ky. Aug. 29, 2022) (same). Additionally, the Sixth Circuit has declined to extend the mailbox rule to the determination of filing dates for state post-conviction applications. *Vroman*, 346 F.3d at 604.

In sum, Kentucky procedural law considered Castle's post-conviction motion "properly filed" on July 27, 2020. For purposes of determining tolling under the AEDPA, this Court must defer to the date which Kentucky courts accepted Castle's motion. Thus, the statute of limitations ran between November 16, 2019 and July 27, 2020—254 days.

After the Johnson Circuit Court denied his post-conviction motion, Castle appealed the order to the Kentucky Court of Appeals. The Court of Appeals affirmed the Johnson Circuit Court. Then, Castle moved for discretionary review by the

Kentucky Supreme Court. That order was denied on September 14, 2022, and the AEDPA statute of limitations again began to run. *Isham v. Randle*, 226 F.3d 691, 695 (6th Cir. 2000) ("[T]he denial of state post-conviction relief becomes final for the purposes of habeas relief after a decision by the state's highest court."). The statute of limitations ran until January 10, 2023, when Castle signed his § 2254 petition—or 118 days. *Cook v. Stegall*, 295 F.3d 517, 521 (6th Cir. 2002) (citing *Houston v. Lack*, 487 U.S. 266, 273, 101 L. Ed. 2d 245, 108 S. Ct. 2379 (1988)). *See Williams v. Birkett*, 670 F.3d 729, 732 n.1 (6th Cir. 2012). Excluding the above tolled periods of time, Castle filed the instant § 2254 petition 372 days after learning of the factual predicate underlying his claim. In other words, the petition is untimely by seven days.

B.  **EQUITABLE TOLLING**

Castle argues that, if the Court determines his § 2254 is untimely, he is nonetheless entitled to equitable tolling. [DE 16, PageID# 323]. Indeed, an untimely § 2254 petition may benefit from equitable tolling under limited circumstances. *Allen v. Yukins*, 366 F.3d 396, 401 (6th Cir. 2004) (citing *Dunlap v. United States*, 250 F.3d 1001, 1007 (6th Cir. 2001)). Specifically, equitable tolling permits federal courts to review a time-barred habeas petition "provided that 'a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond that litigant's control.'" *Robinson v. Easterling*, 424 F. App'x 439, 442 (6th Cir. 2011), *cert. denied*, 565 U.S. 964, 132 S. Ct. 456, 181 L. Ed. 2d 297 (2011) (quoting *Robertson v. Simpson*, 624 F.3d 781, 783 (6th Cir. 2010)).

To be entitled to equitable tolling, a petitioner must show: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in

11

his way." *Pace v. DiGuglielmo*, 544 U.S. 408, 418, 125 S. Ct. 1807, 161 L. Ed. 2d 669 (2005); *see also Holland v. Florida*, 560 U.S. 631, 649, 130 S. Ct. 2549, 177 L. Ed. 2d 130 (2010). And the petitioner "bears the burden of demonstrating that he is entitled to equitable tolling." *McClendon v. Sherman*, 329 F.3d 490, 494 (6th Cir. 2003) (citation omitted).

To prevail, Castle must prove both *Pace* prongs: that he pursued his rights diligently and that some extraordinary circumstance stood in his way. *Pace*, 544 U.S. at 418. Castle argues that he has diligently pursued his rights from the outset because he filed motions to compel his case file, timely filed his state post-conviction motion, and filed the instant § 2254 less that four months after the Kentucky Supreme Court denied discretionary review of his state post-conviction motion. [DE 16, PageID# 323–24].

Castle has not proved that he was diligently pursuing his rights. First, he did not move to compel his case file until August 28, 2019—over 600 days after Johnson Circuit Court entered its judgment and sentence. Although his subsequent post-conviction motion was timely, and he prepared and filed a § 2254 petition four months after the conclusion of the state court proceedings, the substantial delay in seeking his case file is concerning. Castle could have immediately sought his attorney's case file and potentially learned the factual predicate underlying his ineffective assistance of counsel claims much sooner. And, although his state post-conviction motion was timely, it was filed 254 days after learning about that factual

predicate. The substantial breaks in time between Castle seeking various remedies is not demonstrative of diligence for purposes of equitable tolling.

However, Castle's argument under the second *Pace* prong has some merit. Castle alludes to the delays by the state courts in docketing his motions, which were out of his control, as extraordinary circumstances. The Sixth Circuit has previously extended equitable tolling to a habeas petitioner by using the federal mailbox rule. *White v. Curtis*, 42 F. App'x 698, 701 (6th Cir. 2002) (noting "the apparent justice in granting a state appellant the equitable benefit of the federally-accepted 'mailbox rule' for purposes of tolling a federal statute of limitations"), *abrogated in part by Johnson v. United States*, 457 F. App'x 462, 470 (6th Cir. 2012); *see also Ross v. McKee*, 465 F. App'x 469, 475–76 (6th Cir. 2012) ("The clerk's delay, not attorney error, is the reason Ross's petition was late, and but for the clerk's late acceptance of Ross's filing, Ross's federal habeas petition would have been timely[.]").

Here, the record indicates that Castle mailed his post-conviction motion on July 9, 2023, 18 days before the motion was filed by the clerk. [DE 12-15, PageID#175]. Going by this date, if equitable tolling applied, his § 2254 petition would have been considered filed 9 days *before* the expiration of the statute of limitations. In all, the Court finds that Castle has provided extraordinary circumstances beyond his control: that is, the delays between Castle delivering his petition to prison officials, the post office delivering his petition to the courthouse, and the clerk opening and filing the petition into the state court record.

Regardless, Castle failed on the first *Pace* prong and, therefore, is not entitled to equitable tolling of his petition. Since he is not entitled to equitable tolling, Castle's petition is time-barred, and the Court need not assess the merits of his petition.

### C. CERTIFICATE OF APPEALABILITY

A certificate of appealability ("COA") may issue where a habeas petitioner has made a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This requires a petitioner to demonstrate that "jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). The reviewing court must indicate which specific issues satisfy the "substantial showing" requirement. 28 U.S.C. § 2253(c)(3); *Bradley v. Birkett*, 156 Fed. App'x 771, 774 (6th Cir. 2005).

In cases where a district court has rejected a petitioner's constitutional claims on the merits, "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack*, 529 U.S. at 484. "When a district court denies a habeas petition on procedural grounds without reaching the petitioner's underlying constitutional claim, a COA should issue when the petitioner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

Reasonable jurists would not debate the denial of Castle's § 2254 petition as untimely. Castle failed to comply with the statute of limitations and, as discussed above, is not entitled to additional statutory or equitable tolling. *See Miller-El v.*

14

*Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack*, 529 U.S. at 484). The Court recommends the District Court find that Castle is not entitled to a certificate of appealability.

## IV. CONCLUSION

For the reasons stated above, **IT IS RECOMMENDED** that Castle's § 2254 petition [DE 1] be **DENIED**, and that this matter be **DISMISSED WITH PREJUDICE**, and that no certificate of appealability should issue.

The parties are directed to 28 U.S.C. § 636(b)(1) for appeal rights concerning this Recommended Disposition. Within fourteen (14) days after being served with a copy of this decision, the parties may serve and file objections to the findings and recommendations herein for de novo determination by the District Court. 28 U.S.C. § 636(b)(1). Failure to make timely objections will normally result in waiver of further appeal to or review by the District Court and Court of Appeals. *See Thomas v. Arn*, 474 U.S. 140, 150–51 (1985).

Entered this 18th of August, 2023.

MATTHEW A. STINNETT
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF KENTUCKY